## WOODRUFF and another vs. KING.

REVERSAL OF JUDGMENT. *(1) No reversal for irregularity in the order of evidence. (5) Nor for defect in instructions, not prejudicial to appellant. (6) Nor for repeating instructions to jury, on their return into court.*

PARTNERSHIP. *(3) Chattel mortgage, of firm property, by one partner. (4) Effect of prior dissolution: What notice required.*

REPLEVIN: VERDICT. *(7) When value of plaintiff's special interest need not be found.*

1. Error in admitting an instrument in evidence without proof of its execution, is cured by subsequent proof of such execution, admitted without objection.
2. Possession of a negotiable note is *prima facie* evidence of ownership; and the transfer of a note secured by mortgage carries with it the security, without formal assignment.
3. One partner may execute a chattel mortgage of the firm property to secure a partnership debt, without the consent of his copartner; and his attaching a seal to the instrument, being unnecessary, will not affect its validity.
4. Where, on the dissolution of the firm of A. & B., A. became owner of certain chattels formerly belonging to the firm, a subsequent mortgage of such chattels in the firm name by B. would convey no title, if, prior thereto, the mortgagee had *personal* notice of the dissolution, or due *public* notice thereof had been given.
5. The instructions given herein, taken together, containing a full and correct expression of the law as above stated, and any defect in single instructions not being such as could have misled the jury *to the appellant's prejudice*, such defect is not ground of reversal.

6. It is not error for the court, upon the coming in of the jury for that purpose, to read its instructions to them a second time, in order to satisfy one or all of the jury as to the true state of the law upon the issues before them.

7. In replevin, where plaintiff, claiming as mortgagee, has acquired and retains possession by giving the statutory bond, a verdict in his favor, finding him entitled to the possession, need not determine the value of his special interest. *Warner v. Hunt*, 30 Wis., 200, and earlier cases in this court, distinguished.

APPEAL from the Circuit Court for *Chippewa* County.

Replevin, commenced in February, 1878, by *Charles E.* and *Adelbert N. Woodruff* for horses, the possession of which plaintiffs claim by virtue of a chattel mortgage executed to James H. Woodruff, by Woodruff & Grist, to secure the note of that firm for $232, dated November 3, 1877, payable December 23, 1877. Plaintiffs were sons of James H. Woodruff. Another Charles E. Woodruff, brother of James H. Woodruff, testified that in November, 1877, he was one of the firm of Woodruff & Grist, and as such executed the note and mortgage in question to secure a debt of that firm. Defendant claimed to own the horses by purchase from Grist in December, 1877. Grist testified for the defendant, among other things, that the partnership between him and Woodruff was dissolved in 1876, and that the note and mortgage were executed without his knowledge.

It was admitted that plaintiffs had duly acquired possession of the property from the officer, and retained the same. The other evidence need not be stated.

One of the instructions given by the court is recited in the opinion. The court further instructed the jury that if the partnership had not been dissolved, and the horses were the property of the firm, either partner could mortgage them in the name of the firm to secure a *bona fide* firm debt; that if the firm did not owe the debt for which the note and mortgage were given, those instruments were void; that a former partner neglecting to give public notice of a dissolution of the

partnership, is liable to one who contracts with his copartner upon the credit of the firm, and who has no notice of the dissolution; and that if, at the time of the making of the note and mortgage in question, the firm of Woodruff & Grist were legally indebted to the mortgagee to the amount of the note; if the partnership had been previously dissolved, but it had been agreed at the time of such dissolution that Grist was to have all the personal property and pay all the debts of the firm; if the mortgage was on file in the proper office at the time of the sale of the horses to defendant; and if the mortgagee and the plaintiffs had no notice of the dissolution of the copartnership or of the assignment of the property to Grist — then they must find for the plaintiffs.

There was a verdict for the plaintiffs, that they were entitled to the possession of the property, the value of which was assessed at $300; and nominal damages were also assessed in their favor. The judgment was that plaintiffs retain possession of the property, and recover the nominal damages, with costs. From this judgment the defendant appealed.

For the appellant, there was a brief by *Jenkins & Boland*, and oral argument by *Mr. Jenkins*.

For the respondent, there was a brief by *H. Richardson*, and oral argument by *J. M. Bingham*.

·ORTON, J.   The first error complained of, that the note and mortgage, the foundation of the plaintiffs' title, were received in evidence without proof of their execution — if error it was, which we do not decide, — was cured by the testimony of Charles E. Woodruff, taken immediately thereafter, and received without objection, in proof of their execution. *Zimmerman v. Fairbank*, 35 Wis., 368; *McPherson v. Rockwell*, 37 Wis., 159.

The objection that the assignment of the mortgage to and the ownership of the note and mortgage by the respondents were not proved, cannot be very intelligently considered, on

account of the absence of the note and any copy of it from the evidence and papers in this court. It is conceded that there was no formal assignment of the mortgage, although it was proved that the respondents had purchased the note and mortgage from James H. Woodruff, the mortgagee, for value; and their transfer, therefore, depends upon the negotiability of the note. It was, however, claimed and insisted by the counsel of the respondents, upon the argument, that it was negotiable, and this fact was either admitted or not denied by the counsel of the appellant; so that it will be assumed that it was, and this disposes of the objection; for the possession and production of the note, so negotiable, by the respondents, were *prima facie* or presumptive evidence of its ownership by them (Story on Prom. Notes, § 381), and the transfer of the note carried with it the mortgage security. *Croft v. Bunster*, 9 Wis., 503; *Rice v. Cribb*, 12 Wis., 179.

The point made that Charles E. Woodruff, one of the copartnership of Woodruff & Grist, could not so execute the chattel mortgage, even to secure a partnership debt, without the consent of his copartner, is not well taken. The authorities upon the direct question here presented are nearly if not quite uniform in favor of such right. Herman on Chattel Mortgages, § 118, and cases cited in note 4; *Milton v. Mosher*, 7 Met., 244; *Purviance v. Sutherland*, 2 Ohio St., 478; *Sweetzer v. Mead*, 5 Mich., 107. And these last named authorities are also clear and to the point that the attachment of a seal to the chattel mortgage would not affect such right, because unnecessary to such an instrument. It was claimed upon the trial that, before the note and mortgage were executed, the firm of Woodruff & Grist had dissolved, and all the personal property of the concern, including the horses in dispute, became the individual property of Grist, who sold the horses to the appellant; and it was shown that the mortgage was duly filed in the town clerk's office long before such sale. It was therefore an important question, whether any public notice or *per-*

*sonal* notice of such dissolution had been given before the execution of the mortgage, so as to charge the mortgagee, James H. Woodruff.

The court below charged the jury, in respect to this question: " If the evidence in this case satisfies you that the co-partnership between Woodruff and Grist has ceased to exist by mutual consent of the members thereof; *that the public had received notice of such dissolution;* and that a part of the conditions of such dissolution was that the horses in question had been assigned, sold and delivered to the defendant as his property — then the partner Woodruff had no right to encumber the same by chattel mortgage." The learned judge probably intended by *defendant,* the partner Grist, the vendor of the property. Exception is taken to that part of the instruction in italics.

This instruction, if objectionable at all, must be so because of its being too favorable to the appellant; for the jury are instructed to find for the defendant, if they find the facts mentioned, and that a *public* notice of the dissolution had been given, whether *personal* notice of such dissolution was given to the mortgagee or not, before taking the mortgage.

But, favorable or unfavorable to the appellant, his learned counsel contends that it was erroneous because it did not express the whole law upon the subject of such notice, and include both *public* and *personal* notice. This objection is fully met by other parts of the charge, which give protection to the mortgagee only if he had no notice whatever, either public or personal, of the dissolution; as in the language of the third instruction, " neglecting to give public notice," and " who has no notice;" and of the fourth instruction, "and the plaintiff herein had no notice of the dissolution." The instructions, taken together, contain a full and correct expression of the law upon the subject.

The jury coming into court and asking that the charge of the court be again read to them (whether for the purpose

of instruction upon the law to one or all of them), ·which is complained of here as error, is a practice not only common, but approved by all authorities.

The only remaining question to be disposed of is, whether the verdict is incomplete and insufficient in not finding the mortgage interest, and the value of the special property of the respondents in the property taken by the writ. The respondents have possession of the property, having given the bond required by the statute, and recovered upon all the issues, and of course there was no return of the ·property awarded. The doctrine established by this court, in analogy to the practice in a justice's court in this form of action, is, that when a return of the property may be awarded as an alternative with judgment for its value, then, and then only, the interest of the successful party should be ascertained, in fixing the value of his special property which is to be the limit of such judgment. *Booth v. Ableman*, 20 Wis., 21; *Battis v. Hamlin*, 22 Wis., 669; and *Warner v. Hunt*, 30 Wis., 200. This practice cannot be extended to a case like this, where the plaintiffs were entitled to the possession of the property under the chattel mortgage, to be disposed of by them according to the terms of the mortgage, and according to law, to satisfy the mortgage debt, or the part thereof remaining unpaid, whatever it may be.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.