Devine vs. Bank of Baldwin.

DEVINE, Respondent, vs. BANK OF BALDWIN, Appellant.

*September 9 — September 26, 1895.*

*Banks and banking: Certificates of deposit: Unauthorized payment: Estoppel: Negligent delay: Court and jury: Instructions: Evidence.*

1. Plaintiff, who could neither read nor write, held a certificate of deposit of $400 in the defendant bank, payable to his order on the return thereof properly indorsed. He returned it and received therefor $100 in cash and another certificate for $200 only. About eleven months later, when he called for the amount due on this last certificate, he claimed for the first time that he was entitled to $100 more. It appeared that $100 had been paid and indorsed on the face of the $400 certificate about three months before it was returned; but the plaintiff testified that the money was not drawn or received by him, and the bank was unable to name the person to whom it was paid. Upon the evidence showing these facts, among others, and tending to show that, without plaintiff's fault, some unauthorized person had obtained possession of the $400 certificate and had drawn the $100 thereon, it is *held* that plaintiff was not, as a matter of law, guilty of such negligence in failing to discover and inform the bank of the unauthorized payment as to estop him from asserting his claim for the amount thereof.

2. An instruction in such case that the jury might take into consideration the fact that plaintiff could not read or write; that he had never examined the papers and did not know what was in them; and that his wife was a poor reader and never read them, "as tending to explain and break the force of his holding them so long without saying anything about the discrepancy," was not erroneous.

3. To establish an estoppel in such a case the defendant must show, by proof and reasonable inferences from it, that it had been or might be prejudiced by plaintiff's negligence or delay. A mere possibility, conjecture, or surmise that it would otherwise have been in a better position will not suffice.

APPEAL from a judgment of the circuit court for St. Croix county: E. B. BUNDY, Circuit Judge. *Affirmed.*

This was an action to recover money deposited by the plaintiff with the defendant, upon substantially the follow-

Devine vs. Bank of Baldwin.

ing facts: On November 17, 1890, the plaintiff deposited $500 with the defendant, receiving a certificate by which that sum was "payable to the order of himself, six months after date, with interest at the rate of five per cent. per annum, for six months only, on return of this certificate properly indorsed; . . . not subject to check." The particulars of the certificate were entered on the stub in the book from which the certificate was taken. May 13, 1891, the plaintiff surrendered this certificate, obtaining $100, and $12.50 for accrued interest, receiving another certificate, in the same terms, for $400. December 21, 1891, the plaintiff returned this certificate, and obtained $100, and $7.50 for accrued interest, and another certificate, in like terms as the first, but for $200 only. March 31, 1892, the plaintiff obtained $100 on this certificate, which was indorsed on its face, and he held the same until November 16, 1892, when he called for the amount due him, and received only $100, and $2.50 for accrued interest. He then claimed for the first time that there was $100 more due him than was called for by the last certificate. It appeared that on the 7th of September, 1891, there had been $100 paid and indorsed on the $400 certificate and on its corresponding stub, and that such payment was entered on the blotter and ledger of the bank under the same date. The controversy was in relation to this payment.

The defendant pleaded and insisted that upon the evidence the plaintiff was estopped from recovering by presenting the $400 certificate with the payment of $100 indorsed on it under date of September 7, 1891, and by receiving therefor, December 21, 1891, the $100 and accrued interest, with the new certificate for only $200, and by his not making any claim for more until November 16, 1892, about fourteen months after the $100 was paid and indorsed on the $400 certificate. The evidence was clear that this $100 was paid September 7, 1891, but the defendant was unable to produce

any evidence to show to whom it was paid, and the banker transacting the business was unable to testify that he paid it to the plaintiff or to his wife, but said that he paid it to the plaintiff or to some one who satisfied him that he was authorized to receive it.   The testimony tended to show that some unauthorized person had obtained possession of the $400 certificate, and had drawn $100 thereon, but who it was, or when, or by what means the certificate was obtained, there was no evidence to show.

The plaintiff testified that he could neither read nor write; that he could count and make very simple ·computations in his head — could not read figures; that he never drew the $100 in question; and that on the day the indorsement bore date he was not at Baldwin, but was at work all day on a building many miles distant, and in this fact he was corroborated by another witness; that when he got each of the certificates he took it home and gave it to his wife, who kept it for him; that he never authorized any one to get this money; and that he trusted· to the bank to keep the matter straight.   His wife testified that she did not draw the money; that she was never at the bank, and that the certificates never went out of her custody except when she gave them to her husband; that she kept the certificates in an envelope in a bureau drawer in her bedroom, and that it was locked most of the time; that she may have let her daughter look at it, but she did not take it, and never gave it to her to draw money with, and never gave it to any person except her husband, and that she never read the certificate; that she could read writing a little — could make it out very poorly.   The daughter testified that she never took the certificate, and never drew any money on it, and never gave it to any one else, and was never at Baldwin until after the certificate was entirely taken up.   She corroborated her mother as to the place and manner of keeping the certificate.

The defendant asked the court to direct a verdict in its favor, claiming that the act of keeping the certificate with this indorsement was an estoppel; but the court refused to so instruct the jury. The court left it to the jury to say whether the money had been paid; that a payment, in order to be valid, must be made to the plaintiff or to some one authorized to receive the money; that if any one not authorized got possession of the certificate, without negligence on the part of the plaintiff and without authority from him, payment to such person, though in good faith, would not be a good payment. Referring to the claim of defendant's counsel that the plaintiff was estopped, the court said: "If the plaintiff read the last certificate, or read the certificates taken with the last one and the indorsements, and knew the contents of them, then the fact that he slept upon his rights and remained silent on the question so long would be a circumstance, and possibly a strong circumstance, tending to show this claim for $100 is not made in good faith and not founded on truth. But you must take into consideration the further fact that he says that he could not read or write, and that he never examined these papers, never read them, and did not know what was in them. The wife testifies that she was a poor reader, and she never read them, and there is no evidence contradicting this fact, that plaintiff cannot read. You will take that into consideration, of course, as tending to explain and break the force of his holding them so long without saying anything about the discrepancy."

There was a verdict and judgment for the plaintiff, and the defendant appealed.

For the appellant there was a brief by *Baker & Helms*, and oral argument by *E. W. Helms*. They contended, *inter alia*, that plaintiff is conclusively presumed to have known the contents of the certificate, and is now estopped to deny that the payment of September 7, 1891, was neither made to nor authorized by him. 2 Pomeroy, Eq. Jur. § 818; *Sanger*

Devine vs. Bank of Baldwin.

*v. Dun,* 47 Wis. 615, 620; *Herbst v. Lowe,* 65 id. 316, 321; *Wilcox v. Continental Ins. Co.* 85 id. 193, 197; *Germania F. Ins. Co. v. M. & C. R. Co.* 72 N. Y. 90; *Hill v. S., B. & N. Y. R. Co.* 73 id. 351. Apart from this conclusive presumption, the law enjoined upon plaintiff the duty to examine the certificate when it was given to him and to object if it did not properly state the amount of his deposit remaining in the bank. Failing in that duty, he cannot now hold the defendant for the amount. *Leather M. Bank v. Morgan,* 117 U. S. 96.

For the respondent there was a brief by *John W. Bashford,* and oral argument by *R. M. Bashford.*

PINNEY, J. In determining whether the jury should have been unconditionally instructed to find for the defendant on the ground of estoppel, it must be assumed that the payment by the bank to whoever received it was without authority and in its own wrong. The certificate was payable to the order of the plaintiff, on its return properly indorsed. It was the defendant's duty to observe the terms of the certificate and make payment only in accordance with them, and the plaintiff had a right to assume that it would act accordingly. Evidently, the deposit was in the nature of an investment to obtain the stipulated interest on the amount; and the plaintiff, having obtained the certificate and put it away in a place of supposed safety, had but little occasion to examine it, much less than he would have had if the deposit had been in the form of a pass book periodically balanced, the vouchers of payment being returned. In this respect the case is more favorable for the plaintiff, and there was less frequent occasion for scrutiny; but if the transaction had been in the latter form, and the plaintiff had been charged with improper items in his account, and it had been balanced on the basis of such charges, the account could have been impeached and readjusted by proof of fraud or mistake.

*Weisser's Adm'r v. Denison,* 10 N. Y. 68, 82; *Frank v. Chemical Nat. Bank,* 84 N. Y. 213; *Shipman v. Bank of State of N. Y.* 126 N. Y. 327; *Conville v. Shook,* 144 N. Y. 688. As was said in the former case: "The duty and the risk of ascertaining, when it was about to pay out money, that it was being paid upon competent authority, was upon the bank, just as it is in all other cases upon the debtor to see to it that he pays his creditor and not some one else without authority." The plaintiff had not done anything to mislead or deceive the defendant, nor had he conferred upon any one an apparent right or authority to receive the money in dispute. The defendant does not produce any written authority, nor is there any testimony showing the terms of any verbal authority, or who made pretense of any, and it is unable to name the person to whom it paid the money. The transaction was not only unauthorized by the terms of the certificate, but it was contrary to the well-understood course and usages of bankers. Had the plaintiff first discovered the unauthorized payment the next day after the $200 certificate had been issued to him, it is impossible to say that he would not have been entitled to have the improper credit canceled and the certificate corrected; but the claim is that he is absolutely estopped by having retained this certificate, as well as the former one upon which the indorsement of September 7, 1891, was made, so long without objection; that he had slept on his rights; and that by reason of his negligence he is barred of his right to recover his money, wrongfully paid out to some unknown person.

The estoppel relied on depends upon proof of negligence on his part, by which the defendant has been or may be prejudiced in reclaiming the money if he is allowed to maintain his claim. The question of negligence is one of fact, depending upon inferences properly to be drawn from the evidence and the peculiar circumstances of the case, even though there is no serious conflict of testimony; and whether he was negli-

Devine vs. Bank of Baldwin.

gent or not is not merely a question of law for the court, but a mixed question of law and fact for the jury, under proper instructions from the court. This was so held in *Leather M. Bank v. Morgan,* 117 U. S. 98–100, 122. In that case it is said: "It seems to us that if the case had been submitted to the jury, and they had found *such negligence* upon the part of the depositor as precluded him from disputing the correctness of the account rendered by the bank, the verdict could not have been set aside as wholly unsupported by the evidence. . . . While no rule can be laid down that will cover every transaction between a bank and its depositor, it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties and the established and known usages of banking business." *Janin v. London & S. F. Bank,* 92 Cal. 14; *Shipman v. Bank of State of N. Y.* 126 N. Y. 327–329, and cases above cited.

The evidence shows that the plaintiff could neither read nor write, and that his wife could read but little and could not write; that she could make out little from plain writing, and that they were careful and cautious in respect to the custody of the certificate, and, if it got into unauthorized hands, it was not through any want of care or caution on their part; that the plaintiff did not know of the unauthorized payment until about fourteen months after it was made; that, although made about three months and a half before the $200 certificate was issued (December 21, 1891), it does not appear that at the latter date anything was said or suggested about any payment or indorsement. The case is between the original parties to the transaction, and the defendant has no right to claim the benefit of a mistake, apparently wholly its own fault, and to insist that the plaintiff shall lose his money, unless there is reason to find or infer from the evidence that the plaintiff, after the wrongful pay-

Devine vs. Bank of Baldwin.

·ment and indorsement, was guilty of negligence in not dis-
·covering and informing the defendant of the fact, whereby
it has been or may be prejudiced.   The request that the jury
:should be instructed to find for the defendant was properly
·denied.

If the defendant had desired other or fuller instructions,
it should have asked for them.   The instruction given on this
:subject was excepted to, but it cannot be said that it was
·erroneous, the court having told the jury that they might
:take into consideration the fact that he could not read or
write, that he never examined the papers, and did not know
what was in them; and that his wife was a poor reader, and
never read them,— "as tending to explain and break the
force of his holding them so long without saying anything
about the discrepancy."

We are unable to say that, upon the facts proved, there
·could properly be any inference drawn by the jury that the
defendant had been or might be prejudiced by the failure of
the plaintiff to make earlier discovery and communication of
the improper payment.   Had he discovered and communi-
cated it when he obtained the $200 certificate, about three
months and a half after the indorsement was made, there is
nothing to indicate that the bank would have then been able
to ascertain to whom it had paid the money, or that it would
probably have been in any better position than when the
plaintiff first claimed that the payment was wrongful.   The
defendant was bound to make out its case by proof and rea-
sonable inferences from it.   A mere possibility, conjecture,
or surmise that it would have been in a better position will
not suffice.   *Janin v. London & S. F. Bank,* 92 Cal. 14, 27.
This is not in conflict with what was held in *Leather M.
Bank v. Morgan,* 117 U. S. 115, in which it was said that, to
make out the defense, "it is sufficient if it appears that the
bank, by reason of the negligence of the depositor, was pre-

vented from promptly and, it may be, effectively" exercising its remedies to compel restoration and payment.

Judgment was properly given for the plaintiff.

*By the Court.*— The judgment of the circuit court is affirmed.