McNamara vs. The Village of Clintonville.

---

## McNamara vs. The Village of Clintonville.

*January 13 — February 3, 1885.*

NEGLIGENCE: PERSONAL INJURIES: DAMAGES.  *(1) Defective sidewalk: Court and jury.  (2) Contributory negligence matter of defense. (3) Loss of practice by physician: Diploma.  (4) Injury aggra-. vated by tendency to disease: Liability of wrong-doer.*

1. Upon the evidence in this case it is *held* that the questions whether the sidewalk was defective at the place where the plaintiff was injured, and whether the plaintiff's negligence contributed to his injury, were properly submitted to the jury.
2. Plaintiff's contributory negligence, if not disclosed by his own testimony, is purely a matter of defense.
3. In estimating damages on account of personal injuries any loss sustained through inability to continue a lucrative professional practice may be considered; and where the plaintiff is a practicing physician the fact that he neither has a diploma nor is a member of any medical society so as to entitle him to recover compensation for his services (sec. 1436, R. S.) or to assume the title of physician (ch. 256, Laws of 1881; ch. 40, Laws of 1882), is immaterial.
4. Where personal-injuries result proximately from negligence or other tort, the wrong-doer is liable for the damages actually sustained, although they are increased by a tendency to disease on the part of the person injured.

APPEAL from the Circuit Court for *Waupaca* County.

Action to recover damages for personal injuries alleged to have been caused by defects in a sidewalk in the defendant

| | |
|---|---|
| 62 | 207 |
| 76 | 548 |
| 76 | 624 |
| 62 | 207 |
| 78 | 680 |
| 62 | 207 |
| 85 | 523 |
| 62 | 207 |
| 86 | 344 |
| 62 | 207 |
| 88 | 323 |
| 62 | 207 |
| 91 | 595 |
| 62 | 207 |
| 97 | 652 |
| 62 | 207 |
| 99 | 466 |
| 62 | 207 |
| 100 | 164 |
| 62 | 207 |
| 103 | 570 |
| 104 | 456 |
| 104 | 483 |
| 62 | 207 |
| 52 LRA | 38n |
| 52 LRA | 66n |

village.    The circumstances of the accident are thus stated by Mr. Justice CASSODAY:

"About 6 o'clock on the evening of December 22, 1881, the plaintiff started from a drug-store in the village to go to his boarding-place.    In doing so, it became necessary to cross New London street in front of the drug-store, and go southward to, and then upon the sidewalk on, the east side of that street.    That sidewalk crossed a ravine over a trestle-work, and upon each side of it, and immediately over the trestle-work, there was a railing.    The north end of the side-walk commenced about four rods north of the north end of the trestle-work; and near the north end the surface of the walk was about six inches above the surface of the ground; and as it approached the trestle-work where the railing began, the surface of the walk became more elevated from the ground until at a point near the north end of the trestle-work, where it was about thirty inches above the surface of the ground; and that is the point where the testimony tends to show that the plaintiff stepped or fell off the walk and was severely injured.    The night was very dark, and the plaintiff had no light.    It had rained.    The walk was about five feet and four inches wide, and turned to the westward about seven inches in nineteen feet.    There was no railing or barrier on either side of this elevated walk north of the north end of the trestle-work.    The plaintiff's testimony tends to prove that at the time of the injury he was walking carefully, with his hands out before him feeling for the railing₃ as he approached them.    The plaintiff was familiar with the *locus in quo*."

The plaintiff testified that he was a physician and had been practicing medicine about ten months before the accident occurred.    On his cross-examination he testified that at the time of the accident he was not a regular physician or a graduate of any college, and had no certificate or diploma, but was practicing, holding himself out to be a physician

McNamara vs. The Village of Clintonville.

with the consent and knowledge of the state board of health, and that in February, 1884, he received a diploma from Rush Medical College.

The principal injury sustained by the plaintiff was an injury to the knee joint, and was of such a nature that he had not recovered from it at the time of the trial, in 1884.

A motion for a nonsuit made at the close of the plaintiff's testimony was denied. The instructions given and refused will sufficiently appear from the opinion. There was a verdict for the plaintiff assessing his damages at $1,350; a motion for a new trial was denied; and from the judgment entered on the verdict the defendant appealed.

The cause was submitted for the appellant on the brief of *Finch & Barber*, and for the respondent on that of *J. F. Burke*, attorney, and *E. P. Smith*, of counsel.

CASSODAY, J. Upon principles too well established by this court to require reiteration, the question whether the sidewalk was defective at the place of the injury was for the jury, and not for the court. *Kaples v. Orth*, 61 Wis. 531; *Hill v. Fond du Lac*, 56 Wis. 246; *Wright v. Fort Howard*, 60 Wis. 119; *Kenworthy v. Ironton*, 41 Wis. 647; *Kavanaugh v. Janesville*, 24 Wis. 621; *Cuthbert v. Appleton*, 24 Wis. 383. The same is true with respect to the plaintiff's alleged contributory negligence. *Ibid.* Such negligence, when not disclosed by the plaintiff's testimony, is purely a matter of defense. *Kelly v. C. & N. W. R'y Co.* 60 Wis. 482; *Wright v. Fort Howard*, 60 Wis. 125; *Hoth v. Peters*, 55 Wis. 405; *Randall v. N. W. Tel. Co.* 54 Wis. 147. Here, the court went so far as to indicate that the burden of proving the absence of contributory negligence was on the plaintiff. There is no ground for the defendant's exception to the submission of these questions to the jury, nor to the manner in which they were submitted.

Exception is taken because the court refused to charge,

in effect, that during the time the plaintiff had no diploma he could not recover "for any loss of service" which he had sustained as a practicing physician. Under the statute the plaintiff could not recover compensation for such services rendered during that period; nor could he, during that period, testify as such expert. Sec. 1436, R. S. But neither of those questions is here involved. The statute did not undertake to make the business or service unlawful, nor to prohibit or punish the reception of voluntary payments for such services. *Luck v. Ripon*, 52 Wis. 201. The law in this respect has not been changed by the act to prevent quacks from deceiving the people by assuming a professional title. Ch. 256, Laws of 1881; ch. 40, Laws of 1882. Any loss sustained through inability to continue a lucrative professional practice may be considered in estimating such damages. *Phillips v. L. & S. W. R'y Co.* L. R. 5 C. P. Div. 280; *Ehrgott v. Mayor*, 96 N. Y. 264. These things being so, the plaintiff was not precluded from recovering such damages as he had actually sustained, even though he had no diploma for a portion of the time he was so disabled, and hence the instruction was properly rejected. *Luck v. Ripon*, 52 Wis. 201.

Exception is taken because the court charged the jury, in effect, that if they found for the plaintiff, then no deduction should be made from the damages sustained, by reason of his disability having been prolonged in consequence of a predisposition to inflammatory rheumatism, and because the court refused to charge, in effect, that the plaintiff could not recover if the injury was the result of the disease, and not the direct and proximate result of the defendant's negligence. There is no evidence that would warrant the jury in finding that the disease interfered in the least with the plaintiff's powers of locomotion, or in any way contributed to his stepping or falling from the sidewalk at the time and place in question. The jury have found, in effect, that there was

no negligence on the part of the plaintiff contributing to the injury, and hence that it was the direct and proximate result of the defendant's negligence alone.

The presence of the disease may have aggravated and prolonged the injury and correspondingly increased the damages. The jury were expressly authorized to include in their verdict such increased or additional damages, and we must assume that they did. Was this error? Under the repeated decisions of this court, we must answer this question in the negative. *Oliver v. La Valle*, 36 Wis. 592; *Stewart v. Ripon*, 38 Wis. 584; *Brown v. C., M. & St. P. R'y Co.* 54 Wis. 342. In one of these cases the plaintiff was allowed to recover increased damages by reason of an organic tendency to scrofula in his system, and in each of the others by reason of a miscarriage in consequence of the injury. In the *Brown Case* the distinction was made between actions for tort, where the wrong-doer is held liable for all injuries naturally resulting directly from the wrongful act, though unforeseen, and actions for the breach of contract, where the damages are limited to such as " arise naturally from such breach of contract itself, or from such breach committed under circumstances in the contemplation of both parties at the time of the contract," as in *Flick v. Wetherbee*, 20 Wis. 392; *Richardson v. Chynoweth*, 26 Wis. 656; *Candee v. W. U. Tel. Co.* 34 Wis. 471; *Walsh v. C., M. & St. P. R'y Co.* 42 Wis. 23; *Hill v. Chipman*, 59 Wis. 218; *Hadley v. Baxendale*, 9 Exch. 341; *Hobbs v. L. & S. W. R'y Co.* L. R. 10 Q. B. Cas. 111; *Horne v. Midland R'y Co.* L. R. 8 C. P. Div. 131; *Jones v. George*, 48 Am. Rep. 280; *Bagley v. Cleveland R. M. Co.* 30 Alb. L. J. 490; *S. C.* 21 Fed. Rep. 159.

The rule applicable to contracts thus quoted is taken from the opinion of the court in the recent case of *Hamilton v. Magill*, L. R. 12 Ir. 202, and is there said to be a more accurate statement than is found in *Hadley v. Baxendale*. To the same effect are the notes to that case in Shirley's Lead.

Cas..227–230, and *Harvey v. C. & P. R. R. R. Co.* 124 Mass. 425. See, also, the late case of *McMahon v. Field*, L. R. 7 Q. B. Div. 595, where the plaintiff recovered on contract for the injury to his horses, who caught cold from unnecessary exposure to the weather. In that case *Hobbs v. L. & S. W. R'y Co. supra*, is severely criticised and narrowly-limited, if not entirely overruled. The distinction taken in the *Brown Case* has been recognized in several of the more recent cases, and in some of them that decision is expressly sanctioned. *Baltimore C. P. R'y Co. v. Kemp,* 30 Alb. L. J. 92; *S. C.* 61 Md. 74, 619; *Cincinnati, H. & I. R. R. Co. v. Eaton,* 94 Ind. 474; *Ehrgott v. Mayor,* 96 N. Y. 281; *Tice v. Munn,* 94 N. Y. 621; *Murdock v. B. & A. R. R. Co.* 133 Mass. 15; *Beauchamp v. Saginaw M. Co.* 50 Mich. 163; *McMahon v. Field,* L. R. 7 Q. B. Div. 591; and see Mr. Irving Browne's notes, 47 Am. Rep. 381–387; 41 Am. Rep. 53–58. See, also, as bearing upon the question, *Pittsburg, C. & St. L. R'y Co. v. Staley,* 1 Am. Law J. (Ohio), 136; *S. C.* 30 Alb. L. J. 110; *Lewis v. Flint & P. M. R'y Co.* 19 N. W. Rep. 744. In actions on contracts of carriage it has often been held that a corporation or party could not by contract wholly exempt itself from all liability for injury inflicted by its own negligence. *Richardson v. C. & N. W. R'y Co.* 61 Wis. 596; *Canfield v. B. & O. R. R. Co.* 45 Am. Rep. 268; *Sager v. P., S. & P. & E. R. R. Co.* 50 Am. Dec. 659. In such cases the damages recoverable cannot be within the contemplation of the contract; for they are recovered in spite of it. In *McMahon v. Field* one of the judges went so far as to say that "the parties never contemplate a breach, and the rule should rather be that the damage recoverable is such as is the natural and probable result of the breach of contract." To the same effect is *Ehrgott v. Mayor,* 96 N. Y. 280. In this New York case the court say: "When a party commits a tort resulting in a personal injury, he cannot foresee or contemplate the consequences of his tortious act. . . . A

city may leave a street out of repair, and no one can anticipate the possible accidents which may happen, or the injuries which may be caused. . . . The true rule, broadly stated, is that a wrong-doer is liable for the damages which he causes by his misconduct." 96 N. Y. 281.

"The general rule in tort," says Mr. Sutherland (3 Suth. Dam. 714) "is that the party who commits a trespass, or other wrongful act, is liable for all 'the direct injury resulting from such act, although such resulting injury could not have been contemplated as the probable result of the act done." This is expressly sanctioned in the Maryland case cited, where a cancer was the intervening cause. It is a contradiction to say that parties contemplate — have in mind, things of which they are supposed to be unmindful. In the case cited from Indiana the court say a wider range of inquiry is permissible in actions for tort than for the simple breach of a contract. See Shirley's notes, 329. In that case the court quotes approvingly the rule stated by Mr. Thompson, which is substantially the same rule quoted from Addison approvingly in the Maryland case, that "whoever does a wrongful act is answerable for all the consequences that may ensue in the ordinary and natural course of events, though such consequences be immediately and directly brought about by intervening causes, if such intervening causes were set in motion by the original wrong-doer."

Here the action is not on contract, but for a tort consisting of a breach of statutory duty. The defect in the walk is supposed to have been known to the officers of the municipality. The predisposition to inflammatory rheumatism was an intervening cause, but it was set in motion by the tortious act complained of. It is not likely that the officers of the village actually contemplated that the injury in question would result from the defect in the walk. They must have known, however, that all classes of people, infirm as well as firm, diseased as well as healthy, were liable to

travel upon the walk. Under ordinary circumstances the infirm and diseased would have no difficulty in passing over the walk without incurring injury. But the plaintiff, under the circumstances stated, as found by the jury, incurred the injury without any fault on his part. The mere fact that he was more susceptible to serious results from the injury by reason of the presence of disease, did not prevent him from recovering the damages he had actually sustained.

*By the Court.*— The judgment of the circuit court is affirmed.